**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5671-13T1
                        A-2312-14T1
                        A-2313-14T1

IN THE MATTER OF REGISTRANT A.D.

_____

IN THE MATTER OF REGISTRANT J.B.

_____

IN THE MATTER OF REGISTRANT C.M.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **July 20, 2015** |
| **APPELLATE DIVISION** |

Argued May 27, 2015 — Decided July 20, 2015

Before Judges Nugent, Accurso and Manahan.

On appeal from Superior Court of New Jersey,
Law Division, (A-5671-13) Burlington County,
RCNL No. 2000-03-0025; (A-2312-14) Ocean
County, Docket No. ML# 97-15-0188; (A-2313-
14) Ocean County, Docket No. ML# 02-15-0032.

Fletcher C. Duddy, Deputy Public Defender,
argued the cause for appellant A.D. (Joseph
E. Krakora, Public Defender, attorney; Mr.
Duddy, on the brief).

LaChia L. Bradshaw, Assistant Prosecutor,
argued the cause for State of New Jersey
(Robert D. Bernardi, Burlington County
Prosecutor, attorney; Ms. Bradshaw, of
counsel and on the brief).

Stefan J. Erwin, Assistant Deputy Public
Defender, argued the cause for appellant
J.B. (Joseph E. Krakora, Public Defender,
attorney; Mr. Erwin, of counsel and on the
brief).

William Scharfenberg, Assistant Prosecutor,
argued the cause for State of New Jersey

(Joseph D. Coronato, Ocean County Prosecutor, attorney; Mr. Scharfenberg, of counsel and on the brief).

Stefan J. Erwin, Assistant Deputy Public Defender, argued the cause for appellant C.M. (Joseph E. Krakora, Public Defender, attorney; Mr. Erwin, of counsel and on the brief).

William Scharfenberg, Assistant Prosecutor, argued the cause for State of New Jersey (Joseph D. Coronato, Ocean County Prosecutor, attorney; Mr. Scharfenberg, of counsel and on the brief).

The opinion of the court was delivered by

NUGENT, J.A.D.

Appellants are registered sex offenders whose Law Division applications to terminate their obligations under Megan's Law's registration requirements, N.J.S.A. 2C:7-1 to -5 (the Registration Law), were denied. The Registration Law authorizes a court to terminate a registrant's obligations if, among other requirements, the registrant "has not committed an offense within 15 years following conviction or release . . . whichever is larger, and is not likely to pose a threat to the safety of others." N.J.S.A. 2C:7-2f. Appellants' applications were denied because each appellant had committed an offense — though not a sex offense — within the fifteen year period.

These appeals require us to decide whether the term "offense" in N.J.S.A. 2C:7-2f means "a crime, a disorderly persons offense or a petty disorderly persons offense unless a

particular subsection in the code is intended to apply to less than all three[,]" the definition given in the general definitional subsection of the New Jersey Code of Criminal Justice (the Code); or a "sex offense" as defined in the Registration Law. Having considered appellants' arguments in light of the record and controlling law, and having found no ambiguity in the statutory language, we conclude the term offense means what the Code's general definitional subsection defines it to mean. Accordingly, we affirm the trial courts' orders.[1]

## I.

### A. A.D.'s Appeal.

The parties do not dispute the facts. On February 7, 1997, A.D. was convicted of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4a, an offense that triggered the requirements of the Registration Law. The court sentenced A.D. to three years' probation and community supervision for life (CSL), N.J.S.A. 2C:43-6.4.[2] A.D. initially complied with the Registration Law.

---

[1] These are back-to-back appeals, which we consolidate for this opinion.

[2] N.J.S.A. 2C:43-6.4 was amended by L. 2003 c. 267 to clarify that lifetime community supervision for sex offenders is parole supervision. As part of the amendment, "Community Supervision for Life" was changed to "Parole Supervision for Life."

More than fifteen years after his conviction, in 2015, A.D. filed a motion to be relieved of the Registration Law's obligations. In support of his application, he submitted a licensed psychologist's "Psychosexual Evaluation Actuarial Risk Assessment" in which the psychologist reported that A.D.'s recidivism risk level was low. The psychologist noted that A.D. had been diagnosed with Alzheimer's Disease.

During the hearing on A.D.'s application, his counsel represented that A.D. "ha[d] gone fifteen years since his date of conviction[,] . . . [and] the underlying crimes for which he was convicted do not bar him from removal pursuant to subsection G of the statute."[3] Emphasizing A.D.'s expert report, counsel argued A.D. no longer posed a threat to society. Additionally, counsel explained that because A.D. suffered from Alzheimer's Disease and was under the constant care and supervision of his mother, the registration requirements presented nothing more than a burden to his family. The State did not oppose A.D.'s application.

For reasons that have nothing to do with the issue on appeal and thus need not be explained, neither the court nor

---

[3] N.J.S.A. 2C:7-2g prohibits persons convicted, adjudicated delinquent, or acquitted by reason of insanity for more than one sex offense as defined in N.J.S.A. 2C:7-2b, or aggravated sexual assault, N.J.S.A. 2C:14-2a, or sexual assault, N.J.S.A. 2C:14-2c(1), from making application to terminate their registration obligations.

counsel were aware that in 2005 A.D. had pled guilty to, and been convicted of, violating a special condition of CSL, N.J.S.A. 2C:43-6.4, for failing to notify his parole officer of his change of address. Three months after the court granted A.D.'s application to terminate his registration obligations, the State became aware of his 2005 conviction and moved for reconsideration under Rule 4:49-2.[4]

In opposition to the State's motion, A.D. produced, among other things, an addendum from A.D.'s psychologist affirming that A.D. remained at a low risk for sexually reoffending and did not present an increased risk of harm to members of the community, notwithstanding the intervening conviction. A.D. also submitted a letter written in another case by Philip H. Witt, Ph.D., one of the primary authors of the Registrant Risk Assessment Scale manual. The Registrant Risk Assessment Scale (RRAS) is used to assess whether a registrant's risk of reoffending is low, moderate or high. Dr. Witt stated in his letter:

> Scoring non-sexual offenses on the RRAS is an attempt to capture a general level of "anti-sociality". Hence, only if the non-sexual offense that occurs after the sex offense adjudication (or release from incarceration) is part of a broader, anti-social pattern of behavior, would it increase the likelihood of sex offense

---

[4] The State later amended its motion to request relief from a judgment or order under Rule 4:50-1.

> recidivism and therefore be of interest. This is particularly true of a "failure to register" charge. There is substantial research indicating that failure to register in and of itself does not increase likelihood of sex offense recidivism. Therefore, it is my recommendation that a failure to register charge not preclude an individual's applying for release from Megan's Law.

During the hearing on the State's motion, A.D.'s mother testified that subjecting her son to the Registration Law would impose a significant hardship upon her. She explained that A.D. did not understand the purpose of the hearing and would not be able to register because he would be unable to travel. A.D.'s mother emphasized that A.D. was under her care and goes nowhere by himself.

The court granted the State's motion and vacated its previous order terminating A.D.'s registration obligations.[5] The court rejected A.D.'s argument that his application should be granted because he had not committed a sex offense within fifteen years. A.D. appealed.

### B. J.B.'s Appeal.

J.B. pled guilty to second-degree sexual assault, <u>N.J.S.A.</u> 2C:14-2c, and was sentenced in March 1995 to a five-year custodial term. Following his release from custody, J.B.

---

[5] The Court also rescinded a previous order terminating A.D.'s CSL. A.D. has not appealed the rescission of the order terminating CSL.

initially complied with the Registration Law. In 2006, however, J.B. failed to register and moved from his current address without notifying authorities.

In August 2007, J.B. pled guilty to fourth-degree failure to notify law enforcement agencies of a change of address, N.J.S.A. 2C:7-2d(1) and was placed on probation.[6] Consequently, in 2014 when J.B. applied to terminate his obligation under the Registration Law, the court denied his application, concluding that the intervening conviction, though not for a sex offense, was a bar under N.J.S.A. 2C:7-2f to termination of his Registration Law obligations. J.B. appealed.

### C. C.M.'s Appeal.

C.M. pled guilty to third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3a, and was sentenced in May 1999 to four years' probation. His judgment of conviction was amended in April 2002 to subject C.M. to the requirements of Megan's Law.

Fifteen years after C.M.'s sex offense conviction, he applied to the Law Division to terminate his Registration Law obligations. The court denied the application due to an intervening conviction for violating a final restraining order under the Prevention of Domestic Violence Act of 1991, N.J.S.A.

---

[6] N.J.S.A. 2C:7-2d was amended by L. 2007, c. 19, which, among other things, made failing to notify law enforcement agencies of an address change a third-degree crime.

2C:25-17 to -35.[7]  The court rejected C.M.'s argument that he was entitled to have his registration obligations terminated because he had not committed a sex offense within fifteen years.  C.M. appealed.

On this appeal, A.D. raises these points:

> I.  THE NEW JERSEY SUPREME COURT HAS RECOGNIZED THAT THE WORD "OFFENSE" AS USED IN N.J.S.A. 2C:7-2(f) IS TO BE [INTERPRETED] AS A "SEX OFFENSE[.]"
>
> II.  THE STATUTE'S USE OF THE WORD "OFFENSE" IS AMBIGUOUS ON ITS FACE, AND ALL TENETS OF STATUTORY INTERPRETATION FAVOR DEFINING THE WORD AS A "SEX OFFENSE[.]"
>
> > A.  The legislative history of Megan's Law demonstrates that the legislature intended the word "offense" to mean a "sex offense[.]"
> >
> > B.  If the statute is interpreted to preclude a registrant from being removed from Megan's Law for committing a non-sexual offense, it would lead to absurd results, as it did in this case in the Law Division.
> >
> > C.  The doctrine of lenity favors interpreting the statute to mean sex offense, not a non-sexual criminal offense.

---

[7]  During the hearing on C.M.'s application to terminate his Registration Law obligations, his attorney and the prosecutor appear to have agreed that C.M. had been convicted of either a fourth-degree offense or a disorderly persons offense under N.J.S.A. 2C:29b.  Although the parties have provided the complaint, they have not provided documentary evidence of the final disposition.

III. THE REGISTRANT RISK ASSESSMENT SCALE HAS NO BEARING ON THE INTERPRETATION OF THE WORD "OFFENSE" AS USED IN N.J.S.A. 2C:7-2(f).

IV. INTERPRETING THE WORD "OFFENSE" TO INCLUDE NON-SEXUAL CRIMINAL OFFENSES WOULD NOT BE RATIONALLY RELATED TO THE GOAL OF MEGAN'S LAW, MAKING SUCH INTERPRETATION UNCONSTITUTIONAL.

V. OTHER TRIAL COURTS AVOID A STRICT, OUT-OF-CONTEXTUAL INTERPRETATION OF THE WORD "OFFENSE[.]"

J.B. and C.M. raise these points:

[I.] STATUTORY INTERPRETATION IN THE INSTANT CONTEXT REQUIRES THE EXAMINATION [OF] EXTRINSIC EVIDENCE.

[II.] THE STANDARD WHICH WE MUST INTERPRET PERTAINS ONLY TO SEX OFFENSES.

[III.] THE SUPREME COURT HAS ALREADY OPINED.

[IV.] THE APPELLATE DIVISION'S HOLDING IN IN RE REGISTRANT L.E. RESONATES HEREIN.

[V.] THE TRIAL COURTS DO NOT FEEL THAT FAILURE TO REGISTER IS AN OFFENSE WITHIN THE MEANING OF THE TERMINATION PROVISION.

[VI.] THE PROBABLE CITATIONS OF OPPOSING COUNSEL DO NOT ADDRESS THE MERITS OF THE ISSUE.

II.

A.

We begin with some fundamental principles. When construing a statute, appellate courts conduct a de novo review. State v. Revie, 220 N.J. 126, 132 (2014) (citing State v. J.D., 211 N.J.

344, 354 (2012)); <u>C.A. ex rel Applegrad v. Bentolila</u>, 219 <u>N.J.</u> 449, 459 (2014) (citing <u>In re Liquidation of Integrity Ins. Co.</u>, 193 <u>N.J.</u> 86, 94 (2007)). "The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." <u>DiProspero v. Penn</u>, 183 <u>N.J.</u> 477, 492 (2005); <u>accord</u> <u>State v. Friedman</u>, 209 <u>N.J.</u> 102, 117 (2012). Thus, "[t]he plain language of the statute is our starting point." <u>Patel v. N.J. Motor Vehicle Comm'n</u>, 200 <u>N.J.</u> 413, 418 (2009). In considering a statute's language, we are guided by the legislative directive that

> words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language. Technical words and phrases, and words and phrases having a special or accepted meaning in the law, shall be construed in accordance with such technical or special and accepted meaning.
>
> [<u>N.J.S.A.</u> 1:1-1.]

When construing a statute in which "the Legislature has clearly defined a term, the courts are bound by that definition." <u>Febbi v. Bd. of Review</u>, 35 <u>N.J.</u> 601, 606 (1961) (citations omitted); <u>accord</u> <u>Stenberg v. Carhart</u>, 530 <u>U.S.</u> 914, 942, 120 <u>S. Ct.</u> 2597, 2615, 147 <u>L. Ed.</u> 2d 743, 766 (2000). Moreover, "[i]t is axiomatic that the statutory definition of

the term excludes unstated meanings of that term." Meese v. Keene, 481 U.S. 465, 484, 107 S. Ct. 1862, 1873, 95 L. Ed. 2d 415, 431 (1987) (citation omitted). "'[W]here the Legislature has clearly and explicitly defined a term within a statute, we must assume it did so intentionally and with the intent that its stated definition be applied to that term throughout the statute.'" Ciesla v. N.J. Dep't of Health & Sr. Servs., 429 N.J. Super. 127, 143-44 (App. Div. 2012) (quoting Commerce Bancorp, Inc. v. InterArch, Inc., 417 N.J. Super. 329, 336-37, (App. Div. 2010), certif. denied, 205 N.J. 519 (2011)).

Courts "will only resort to extrinsic aids, such as legislative history, if the plain language of the statute yields 'more than one plausible interpretation.'" State v. Williams, 218 N.J. 576, 586 (2014) (quoting DiProspero, supra, 183 N.J. at 492). "If the plain language yields the meaning of the statute, then our task is complete." Ibid.

With those principles in mind, we turn to the relevant provisions of the New Jersey Code of Criminal Justice and appellants' argument that N.J.S.A. 2C:7-2f is ambiguous.

B.

The Code classifies offenses as crimes, disorderly persons offenses, and petty disorderly persons offenses, N.J.S.A. 2C:1-4, and designates crimes "as being of the first, second, third or fourth degree." N.J.S.A. 2C:1-4a. The Code's general

definitional section, N.J.S.A. 2C:1-14, includes the following statement and definition:

> In this code, unless a different meaning plainly is required:
>
> . . . .
>
> k.  "Offense" means a crime, a disorderly persons offense or a petty disorderly persons offense unless a particular subsection in this case is intended to apply to less than all three[.]

The Code's general definitional subsection does not define the term sex offense.  The Registration Law defines the term sex offense as follows:

> For the purposes of this act a sex offense shall include the following:
>
> (1) Aggravated sexual assault, sexual assault, aggravated criminal sexual contact, kidnapping pursuant to paragraph (2) of subsection c. of [N.J.S.A.] 2C:13-1 or an attempt to commit any of these crimes if the court found that the offender's conduct was characterized by a pattern of repetitive, compulsive behavior, regardless of the date of the commission of the offense or the date of conviction;
>
> (2) A conviction, adjudication of delinquency, or acquittal by reason of insanity for aggravated sexual assault; sexual assault; aggravated criminal sexual contact; kidnapping pursuant to paragraph (2) of subsection c. of [N.J.S.A.] 2C:13-1; endangering the welfare of a child by engaging in sexual conduct which would

> impair or debauch the morals of the child pursuant to subsection a. of [N.J.S.A.] 2C:24-4; endangering the welfare of a child pursuant to paragraph (3) or (4) or subparagraph (a) of paragraph (5) of subsection b. of [N.J.S.A.] 2C:24-4; luring or enticing pursuant to section 1 of P.L.1993, c.291 (C.2C:13-6); criminal sexual contact pursuant to [N.J.S.A.] 2C:14-3 b. if the victim is a minor; kidnapping pursuant to [N.J.S.A.] 2C:13-1, criminal restraint pursuant to [N.J.S.A.] 2C:13-2, or false imprisonment pursuant to [N.J.S.A.] 2C:13-3 if the victim is a minor and the offender is not the parent of the victim; knowingly promoting prostitution of a child pursuant to paragraph (3) or paragraph (4) of subsection b. of [N.J.S.A.] 2C:34-1; or an attempt to commit any of these enumerated offenses . . . .

> [N.J.S.A. 2C:7-2b.]

The Registration Law, among other requirements, obligates convicted sex offenders to: register with the chief law enforcement agency of the municipality in which the person resides or, if the municipality does not have a local police force, the Superintendent of State Police; verify their addresses annually; notify certain law enforcement agencies of a change of address; and provide appropriate law enforcement agencies with information as to whether they have routine access to a computer or any device with internet capability. N.J.S.A. 2C:7-2c, d.

The Registration Law's termination provisions, N.J.S.A. 2C:7-2f & g, permit a registrant to apply for termination only if the registrant has met specific conditions:

> f. Except as provided in subsection g. of this subsection, a person required to register under this act may make application to the Superior Court of this State to terminate the obligation upon proof that the person has not committed an offense within 15 years following conviction or release from a correctional facility for any term of imprisonment imposed, whichever is later, and is not likely to pose a threat to the safety of others.

> g. A person required to register under this subsection who has been convicted of, adjudicated delinquent, or acquitted by reason of insanity for more than one sex offense as defined in subsection b. of this section or who has been convicted of, adjudicated delinquent, or acquitted by reason of insanity for aggravated sexual assault pursuant to subsection a. of [N.J.S.A.] 2C:14-2 or sexual assault pursuant to paragraph (1) of subsection c. of [N.J.S.A.] 2C:14-2 is not eligible under subsection f. of this section to make application to the Superior Court of this State to terminate the registration obligation.

Appellants contend the term offense in N.J.S.A. 2C:7-2f is ambiguous both on its face and when considered in light of the statute's other subsections. Acknowledging that courts need not refer to extrinsic evidence to determine a statute's meaning if the statutory language is clear and unambiguous, appellants begin their argument with the premise that if statutory language "'admits to more than one reasonable interpretation, [courts]

14

may look to sources outside the language to ascertain the Legislature's intent.' State v. Reiner, 180 N.J. 307, 311 (2004)." They next assert that the term offense in subsection f admits to more than one reasonable interpretation. From these two premises, appellants reason that we must resort to extrinsic aids, a process that leads to the conclusion that the term offense means sex offense. For several reasons, we disagree with appellants' assertion that the term offense in subsection f admits to more than one reasonable interpretation.

First, the Code explicitly defines the term offense. As previously noted, N.J.S.A. 2C:1-14k states: "'Offense' means a crime, a disorderly persons offense or a petty disorderly persons offense unless a particular subsection in this code is intended to apply to less than all three[.]" Because the Legislature has defined the term and stated that its meaning applies throughout the Code "unless a different meaning plainly is required," we must assume that the Legislature intended that the term's stated definition controls, Ciesla, supra, 429 N.J. Super. at 144, and that the term excludes unstated meanings, Meese, supra, 481 U.S. at 484, 107 S. Ct. at 1873, 95 L. Ed. 2d at 431. Applying those principles leads to the conclusion that the term offense in N.J.S.A. 2C:7-2f means precisely what it is defined to mean — a crime, disorderly persons offense, or petty

disorderly persons offense — and not the unstated limited meaning, "sex offense."

Next, interpreting the term offense in <u>N.J.S.A.</u> 2C:7-2f as the Code defines it in <u>N.J.S.A.</u> 2C:1-14k is consistent with the Supreme Court's interpretation of the statute in <u>Doe v. Poritz</u>, 142 <u>N.J.</u> 1 (1995). In that decision, the Court held that the Registration Law as well as the Community Notification Law, <u>N.J.S.A.</u> 2C:7-6 to -11, are constitutional. <u>Id.</u> at 12. After summarizing the Registration Law's requirements, the Court stated:

> All of these are lifetime requirements unless the registrant has been offense-free for fifteen years following conviction or release from a correctional facility (whichever is later) and, on application to terminate these obligations, can persuade the court that he or she is not likely to pose a threat to the safety of others. <u>N.J.S.A.</u> 2C:7-2f.
>
> [<u>Id.</u> at 21.]

The Court did not summarize the Registration Law's termination provision as requiring a registrant to be sex offense-free for fifteen years; rather, the Court summarized the termination provision as requiring registrants to be offense-free. And, after so characterizing the Registration Law's termination provision, the Court stated:

> We are aware of the uncertainties that surround all aspects of the subject of sex offender recidivism and the effectiveness of preventive measures. Legislatures, despite

16

> uncertainty, sometimes act to deal with public needs, basing such action on what they conclude, in a welter of conflicting opinions, to be the probable best course. Our Legislature could reasonably conclude that risk of reoffense can be fairly measured, and that knowledge of the presence of offenders provides increased defense against them. Given those conclusions, the system devised by the Legislature is appropriately designed to achieve the law's purpose of protecting the public.
>
> [Id. at 25.]

Lastly, the Registration Law was one of "a group of bills concerning sex offenders" that became law on October 31, 1994. Id. at 12. In addition to the Registration Law and Community Notification Law, the Legislature enacted L. 1994, c. 130, §§1 & 2, the Violent Predator Incapacitation Act of 1994, which, among other things, established the special sentence of community supervision for life, now parole supervision for life, N.J.S.A. 2C:43-6.4. Subsection c authorizes courts to "grant a petition for release from a special sentence of community supervision only upon proof that the person has not committed a crime for 15 years since last conviction or release from incarceration, whichever is later, and that the person is not likely to pose a threat to the safety of others if released from supervision." The Legislature's decision to define the term sex offense in N.J.S.A. 2C:7-2b, use the term offense in N.J.S.A. 2C:7-2f, and use the term crime in N.J.S.A. 2C:43-6.4c, evidences an intent

to use those terms throughout Megan's Law precisely as the terms are defined in the Code.

A.D. argues that the term offense in N.J.S.A. 2C:7-2f "becomes ambiguous when considering it in conjunction with the other subsections of 2C:7-2." J.B. and C.M. argue that because "the State and the Public Defender have a reasonable interpretation of the instant provision," the term offense in N.J.S.A. 2C:7-2f admits to more than one reasonable interpretation. We find appellants' arguments unpersuasive.

A.D. cites three of the Registration Law's sections: N.J.S.A. 2C:7-2b(1) & (2), and N.J.S.A. 2c:7-2e. Subsection 2b(1) includes as sex offenses aggravated sexual assault, sexual assault, aggravated criminal sexual contact, kidnapping under N.J.S.A. 2C:13-1c(2), "or an attempt to commit any of these crimes if the court found that the offender's conduct was characterized by a pattern of repetitive compulsive behavior, regardless of the date of the commission of the offense or the date of the conviction[.]" (emphasis added). Subsection 2b(2), enumerates specific crimes and adds, "or an attempt to commit any of these enumerated offenses . . . ." (emphasis added). Subsection 2e provides, among other things, that "[a] person required to register under paragraph (2) of subsection b. of this section or under paragraph (3) of subsection b. on the basis of a conviction for an offense similar to an offense

enumerated in paragraph (2) of subsection b  shall verify his address annually in a manner prescribed by the Attorney General." (emphasis added).

Emphasizing each of the underscored phrases, A.D. argues that each reference to "[t]he word 'offense' in these [phrases] obviously refers to a sex offense, yet the Legislature only used the word offense, most likely because the continual repetition of the word 'sex offense' would have been too wordy and redundant."  From that observation, A.D. argues that "[s]ince that same pattern is carried in subsection [f], the likely conclusion is that the word 'offense' refers to a 'sex offense' in that subsection as well."

A.D. overlooks both the context and syntax of the subsections he cites.  Subsection b(1) designates certain crimes as sex offenses, includes attempts to commit any of "these crimes," and makes irrelevant "the date of the commission of the offense or the date of conviction."  Contextually, the terms "these crimes" and "the offense" are meaningless unless they refer to the specifically enumerated crimes.  Syntactically, the demonstrative pronoun "these" before "crimes" and the definite article "the" before "offense" refer to specific antecedents, namely, the crimes enumerated in the same subsection.

The same is true of subsections b(2) and e.  In subsection b(2), the phrase "the enumerated offenses" both contextually and

syntactically refers back to the offenses enumerated in that subsection; and the phrase in subsection e — "on the basis of a conviction for an offense similar to an offense enumerated in paragraph (2) of subsection b" — refers explicitly to the crimes enumerated in subsection b(2).

In contrast, subsection f permits "a person required to register under this act," to apply for termination of the obligation "upon proof that the person has not committed <u>an offense</u> within 15 years following conviction or release from a correctional facility . . . ." (emphasis added). The text of subsection f contains no enumerated crimes, and the phrase "an offense" includes the indefinite article "an," which neither contextually nor syntactically refers to an antecedent. Stated in terms of the Code's general definitional section, neither the context nor syntax of subsection f "plainly require[s]" a meaning of offense different from the term's defined meaning. <u>N.J.S.A.</u> 2C:1-14k.

We are also unpersuaded by J.B. and C.M.'s argument that because they and the State both have reasonable interpretations of the term offense in <u>N.J.S.A.</u> 2C:7-2f, the term offense admits to more than one reasonable interpretation. The question whether statutory language is ambiguous is not resolved based on one party's self-proclaimed assertion that the parties'

conflicting interpretations of a statute are reasonable.  As two distinguished authors have pointed out:

> You might be tempted to say, "If the language were plain and unambiguous, we wouldn't be arguing about it, would we?" Banish the thought: lawyers argue about plain and unambiguous language all the time. That is their job: to inject doubt when it is in their clients' interest.
>
> [Antonin Scalia & Bryan A. Garner, <u>Reading Law:  The Interpretation of Legal Texts</u>, 54 (2012).]

Appellants have offered neither persuasive authority nor a persuasive reason why the Legislature's definition of the term offense should be disregarded.  Were we to adopt their arguments we would, in effect, be requiring the Legislature to not only define a term and state that it is used as defined unless a different meaning is plainly required, but then redefine the term each time it is used throughout an enactment.  The folly of such a result is self-evident.

C.

A.D. alternatively contends that if <u>N.J.S.A.</u> 2C:7-2f is found to be facially unambiguous, we should nevertheless consider a committee statement accompanying the bill that became law and added section g to <u>N.J.S.A.</u> 2C:7-2.  <u>L.</u> 2001, <u>c.</u> 392. A.D. bases his argument on the Supreme Court's statement that "whatever the rule of construction, it is subordinate to the goal of effectuating the legislative plan as it may be gathered

from the enactment 'when read in the full light of its history, purpose and context.'" State v. Lewis, 185 N.J. 363, 369 (2005) (quoting State v. Gill, 47 N.J. 441, 444 (1966)). Although we question the validity of A.D.'s argument in a case where a statute is facially unambiguous, we nevertheless address it for the sake of completeness.

The Legislature amended N.J.S.A. 2C:7-2 in 2002 to comply with the federal Jacob Wetterling Act, 42 U.S.C.A. § 14071.

> [The Jacob Wetterling Act] directs the federal Attorney General to establish guidelines for state programs such as Megan's Law that require the registration of persons guilty of offenses of the kind committed by the registrants herein and prescribes the length of time for which offenders must remain registered. 42 U.S.C.A. § 14071(a)(1). For the offenses of which registrants were found guilty, they would be obliged to remain registered for the rest of their lives. Id. at § 14071 (b)(6)(B)(ii). States that fail to implement the Jacob Wetterling Program are to be denied, under 42 U.S.C.A. § 14071(g)(2), ten percent of certain funding that would otherwise be allocated to the States under 42 U.S.C.A. § 3756.
>
> [In re L.E., 366 N.J. Super. 61, 66 (App. Div. 2003).]

This is the pertinent portion of the committee statement A.D. relies on:

> This bill prohibits the removal of certain sex offenders from the State's sex offender registry.
>
> Under the provisions of this bill, registered sex offenders who have been

> convicted of . . . more than one sex offense or who have been convicted of . . . aggravated sexual assault or sexual assault involving physical force or coercion may not apply to the Superior Court to terminate the obligation to register.
>
> Under current State law, a sex offender who has not committed a repeat offense for at least fifteen years may petition a judge to remove his name from the registry. The federal Megan's Law provision in the Jacob Wetterling Act, however, prohibits twice convicted sex offenders or violent sex offenders with one conviction from being released from the requirement to register. States that do not comply with this requirement will lose federal funding beginning in the year 2002.
>
> [Senate Law and Public Safety Committee Statement to Senate No. 2714 (Nov. 29, 2001) (emphasis added).]

A.D. asserts that the phrase "current State law" refers to N.J.S.A. 2C:7-2f, and the term "a repeat offense" refers to the commission of another sex offense. From those assertions, A.D. reasons that the legislative plan as described in the committee statement "is to bar repeat sex offenders from being removed from the purview of Megan's Law" and that the "plan is to be effectuated regardless of the literal text of 2C:7-2f, which is subordinate to the legislature's plan."

We reject A.D.'s argument. The purpose of the committee statement was to describe the provisions of pending legislation, not the provisions of legislation enacted seven years earlier. Thus, any conclusion about previous legislation that might be

23

deduced from the statement is speculative. More significantly, even if the committee statement refers to a repeat sex offender, the committee statement accurately described the "existing law"; before N.J.S.A. 2C:7-2 was amended to add subsection g, a repeat sex offender who had not committed an offense of any kind, including a sex offense, within fifteen years of the last sex offense was not prohibited from seeking termination of his registration requirements. The offender would nonetheless have been prohibited from seeking termination of his registration requirements if he had committed a recent non-sex offense. We thus reject A.D.'s argument.

D.

Appellants next argue that interpreting the word offense in N.J.S.A. 2C:7-2f to mean a non-sex offense would not be rationally related to the goal of Megan's Law. We disagree.

The purpose of the Registration Law is stated in N.J.S.A. 2C:7-1:

> a. The danger of recidivism posed by sex offenders and offenders who commit other predatory acts against children, and the dangers posed by persons who prey on others as a result of mental illness, require a system of registration that will permit law enforcement officials to identify and alert the public when necessary for the public safety.
>
> b. A system of registration of sex offenders and offenders who commit other predatory acts against children will provide law enforcement with additional information

24                                                    A-5671-13T1

> critical to preventing and promptly resolving incidents involving sexual abuse and missing persons.

As we previously pointed out, after noting that Megan's Law's registration requirements "are lifetime requirements unless the registrant has been offense-free for fifteen years following conviction or release from a correctional facility (whichever is later) and . . . can persuade the court that he or she is not likely to pose a threat to the safety of others[,]" Doe v. Poritz, supra, 142 N.J. at 21, the Supreme Court determined that "[o]ur Legislature could reasonably conclude that risk of reoffense can be fairly measured, and that knowledge of the presence of offenders provides increased defense against them. Given those conclusions, the system devised by the Legislature is appropriately designed to achieve the laws' purpose of protecting the public." Id. at 25. The Supreme Court's pronouncements are dispositive of appellants' arguments.

A.D. asserts that "the psychological community believes that the commission of a non-sexual, technical parole violation does not increase one's risk, or danger, to recidivate." From that assertion, A.D. reasons, "[i]t . . . cannot rationally be concluded that the State's interpretation of the word 'offense' is related to the objective of Megan's Law." We disagree.

As the Supreme Court explained in <u>Doe v. Poritz</u>, "[c]onflicting studies and interpretations, especially concerning the precise numbers, abound, but as noted above, the resolution of the controversy in this area is solely a legislative matter." <u>Supra</u>, 142 <u>N.J.</u> at 15, n. 1. Moreover, the Attorney General developed the RRAS and the Registrant Risk Assessment Manual to implement the legislative directive to provide three levels of notification depending upon the risk of reoffense. <u>N.J.S.A.</u> 2C:7-8. "The [RRAS] was rationally derived by a panel of mental health and legal experts by the following process: 1) the selection of risk assessment criteria that have empirical support; 2) the [weighing] of these pertinent risk assessment criteria; and 3) the use of sample cases to assist in the setting of numerical cutoff points for low, moderate and high risk scores." <u>Attorney General Guidelines for Law Enforcement For the Implementation of Sex Offender Registration and Community Notification Law</u> (June 1998, rev'd February 2007), Appendix E at 1.

The RRAS takes into consideration antisocial acts other than sex offenses. <u>Id.</u> at 3. We point this out not to suggest that the Guidelines and Manual are somehow reflective of the Legislature's intent in enacting Megan's Law's registration requirements, but rather to emphasize the invalidity of A.D.'s assertion that reports from one or two psychologists are either

reflective of the psychological community's beliefs or authority for the proposition that including non-sex offenses in the statutory scheme is contrary to the statutory purpose. In short, we are unpersuaded by appellant's arguments.

III.

Appellants next argue that in In re Registrant J.G., 169 N.J. 304 (2001), the Supreme Court held that the term offense in N.J.S.A. 2C:7-2f means sex offense. Alternatively, appellants argue that the Court's reference to the term offense in N.J.S.A. 2C:7-2 as "sex offense" is dicta and the Supreme Court's dicta is binding on the Appellate Division and trial courts. Lastly, appellants argue that the Supreme Court opinion in J.G. at least demonstrates that the term offense in N.J.S.A. 2C:7-2f is ambiguous.

In J.G., the Court undertook "the judicial task of harmonizing [the Legislature's generalized intent to apply Megan's Law to juveniles adjudicated delinquent based on convictions of sex offenses] with the protective philosophy underlying the Code of Juvenile Justice, as well as with that statute's specific provisions[.]" J.G., supra, 169 N.J. at 320. The Court held that for juveniles adjudicated delinquent for committing a sex offense when they were under age fourteen, "Megan's Law registration and community notification orders shall terminate at age eighteen if the Law Division, after a

hearing . . . determines on the basis of clear and convincing evidence that the delinquent is not likely to pose a threat to the safety of others." Id. at 337. In so holding, the Court explained:

> We import that standard but with a higher burden of proof, from N.J.S.A. 2C:7-2, the provision of Megan's Law that authorizes the termination of registration obligations of persons who have not committed a sex offense within fifteen years of conviction or release from a correctional facility, whichever is later.
>
> [Ibid. (emphasis added).]

Appellants argue that the Court's reference to "the termination of registration obligations of persons who have not committed a sex offense within fifteen years" could have referred only to N.J.S.A. 2C:7-2f, is central to the Court's holding, and is therefore dispositive of whether the term offense in that statutory subsection means sex offense.

We disagree with appellants that the Court's reference to the term "offense" as "sex offense" was part of its holding. N.J.S.A. 2C:7-2f imposes two conditions on a registrant's right to seek termination of the registration requirements: first, the registrant must prove that he has not committed an offense within fifteen years following conviction or release; second, the registrant must prove that he is not likely to pose a threat to the safety of others. The Court's holding in J.G., which the Court stated explicitly, was that Megan's Law's registration and

28

community notification requirements shall terminate at age eighteen if, after a hearing, the Law Division "determines on the basis of clear and convincing evidence that the delinquent is not likely to pose a threat to the safety of others." J.G., supra, 169 N.J. at 337.

The Court in J.G. did not impose as a condition of termination a juvenile registrant's non-commission of an offense, sexual or otherwise. Thus, the Court's holding would have been entirely unaffected if it had deleted everything following the statutory citation from its statement, "[w]e import that standard, but with a higher burden of proof, from N.J.S.A. 2C:7-2, the provision of Megan's Law that authorizes the termination of registration obligations of persons who have not committed a sex offense within fifteen years of conviction or release from a correction facility, whichever is later."

Indisputably, the Court's "expression of opinion on a point involved in a case, argued by counsel and deliberately mentioned by the court, although not essential to the disposition of the case . . . becomes authoritative[] when it is expressly declared by the court as a guide for future conduct." State v. Rose, 206 N.J. 141, 183 (2011) (quoting 21 C.J.S. Courts § 230 (2006)). "Indeed, as an intermediate appellate court, we consider ourselves bound by carefully considered dictum from the Supreme Court." State v. Breitweiser, 373 N.J. Super. 271, 282-83 (App.

Div. 2004), certif. denied, 182 N.J. 628 (2005); see also State v. Rawls, 219 N.J. 185, 198 (2014).

On the other hand, not every word and every phrase contained in a Supreme Court opinion constitutes binding precedent. "'Much depends upon the character of the dictum. Mere obiter may be entitled to little weight, while a carefully considered statement . . . though technically dictum, must carry great weight, and may even . . . be regarded as conclusive.'" Barreiro v. Morais, 318 N.J. Super. 461, 468 (1999) (quoting Charles A. Wright, The Law of Federal Courts § 58 at 374 (4th ed. 1983)); cf. State v. Sorensen, 439 N.J. Super. 471, 487-89 (2015) (holding that in an opinion in which our Supreme Court made a statement in its technical discussion but not in its legal discussion, with respect to an issue involving a "countervailing command, namely the Legislature's specific determination," we were bound to carry out the Legislative mandate).

In J.G., the issue of whether the term offense in N.J.S.A. 2C:7-2f meant offense generally, or sex offense as defined in N.J.S.A. 2C:7-2b, does not appear to have been raised or briefed by the parties or analyzed by the Court. Rather, the Court's reference to sex offense appears to be a passing comment. Moreover, the comment appears to contradict the Court's previous explanation that the Registration Law's requirements are

lifetime requirements unless the registrant has been "offense-free." Doe v. Poritz, supra, 142 N.J. at 21. The Court's "offense-free" comment in Doe v. Poritz — where the Court specifically resolved the question whether the Registration and Community Notification Laws were constitutional, id. at 12 — is entirely consistent with the Legislative definition of the term offense in N.J.S.A. 2C:1-14k.

For all of the foregoing reasons, we reject appellants' arguments that the Court's passing comment in J.G. is precedential. Appellants' remaining arguments are without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

IV.

We are not unsympathetic to A.D.'s argument that, with respect to repeat offenders but not repeat sex offenders, there should be no absolute bar under N.J.S.A. 2C:7-2f to the termination of registration requirements, particularly where the repeat offenses are minor; and, that repeat offenses not sexual in nature can be considered by courts in determining whether a registrant has established the second requirement of N.J.S.A. 2C:7-2f, namely, that the registrant "is not likely to pose a threat to the safety of others." In the first instance, however, determining the conditions under which termination are appropriate is a decision for the Legislature to make. Here,

the Legislature has made the decision after acting "on what [it] conclude[d], in a welter of conflicting opinions, to be the probable best course." Doe v. Poritz, supra, 142 N.J. at 25. Courts have a "fundamental duty not to substitute [their] views for those expressed by the Legislature in the language the Legislature selected in enacting a statute[.]" Friedman, supra, 209 N.J. at 118 (citing State v. Baker, 198 N.J. 189, 193 (2009)).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION