# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0561-19

IN THE MATTER OF
REGISTRANT A.R.

_____

Argued September 16, 2021 – Decided September 29, 2021

Before Judges Mawla and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. ML-1491.

Michael C. Woyce, Assistant Deputy Public Defender, argued the cause for appellant A.R. (Joseph E. Krakora, Public Defender, attorney; Michael C. Woyce, on the brief).

David M. Liston, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Yolanda Ciccone, Middlesex County Prosecutor, attorney; David M. Liston, on the brief).

PER CURIAM

A.R. appeals from a September 26, 2019 order denying his request to terminate his Megan's Law, N.J.S.A. 2C:7-1 to 23, and community supervision for life (CSL), N.J.S.A. 2C:43-6.4, obligations. A.R. argues he submitted

sufficient evidence to support the conclusion that he would not pose a risk of harm to the community and contends that the judge improperly relied on the Registrant Risk Assessment Scale (RRAS) in denying his request. We affirm, substantially for the reasons set forth in Judge Colleen M. Flynn's well-reasoned written opinion. We add only the following brief remarks.

We discern the following facts from the record. In 1995, A.R. was living with seven-year-old T.C.[1] and her family. On January 9, 1997, T.C. and her mother reported to the police that A.R., then thirty-two years old, had sexually abused T.C. multiple times between January and June 1995. The next day, T.C. told the prosecutor's office that A.R. used to babysit her two years prior. She stated that A.R. "touched her vagina with his hand underneath her clothes[,] stuck his pee-pee in [her] butt[, and] while she was sleeping on the couch, he pulled down her pants, got on top of her and 'stuck his pee-pee in [her] butt.'" She stated "[h]e also asked her to 'suck on his pee-pee'" and A.R. touched her vagina on approximately thirty occasions. T.C. also stated A.R. threatened to kill her family if she told anyone and provided her "with a lot of stuff" so she would keep the assaults a secret.

---

[1] Initials are used to protect the identity of the victim. <u>R.</u> 1.38-3(c)(12).

A-0561-19

In March 1997, a Passaic County grand jury returned an indictment against A.R. charging him with first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1) (count one); second-degree sexual assault, N.J.S.A. 2C:14-2(b) (count two); and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (count three). He later pled guilty to second-degree sexual assault and was sentenced to a six-year term at the Adult Diagnostic and Treatment Center (ADTC). A.R. was also ordered to register under Megan's Law and sentenced to CSL.[2]

Dr. Mark Frank initially evaluated A.R. in 1997. Dr. Frank noted that A.R. was previously diagnosed with schizoaffective disorder,[3] was unable to control his anger, and had a lengthy history of suicide attempts. Dr. Frank also noted A.R. "reported a long history of poly-drug and alcohol use." During the interview, A.R. admitted to worrying "about engaging in similar inappropriate sexual behavior in the future." Dr. Frank also identified signs of an "underlying psychotic disorder, currently in apparent remission with psychopharmacological treatment." He recommended "sex offender specific psychotherapy, intense

---

[2] While at ADTC, A.R. was convicted of third-degree aggravated assault for which he received a concurrent three-year sentence.

[3] Although Dr. Frank noted that there were no florid psychotic symptomatology during the evaluation, A.R. was taking Navane, an antipsychotic medication.

substance abuse treatment and continued psychiatric/psychopharmacological treatment . . ."

In 2002, Dr. Lawrence Allen Siegel evaluated A.R. Dr. Siegel noted A.R. had "homicidal thoughts when he was drinking in the past" and a history of alcohol and substance abuse. Dr. Siegel's diagnostic impression was pedophilia as well as alcohol and cocaine abuse in institutional remission. Actuarially, A.R. fell into "groups with a less than [fifty percent] risk of sexual re-offense." Dr. Siegel acknowledged his treatment team's observation that A.R. minimizes his "deviant arousal, alcohol problem and psychological problems," but noted that it "does not necessarily equate with a high risk of sexual recidivism." Dr. Siegel recommended that A.R. receive sex offender treatment, substance abuse treatment, and mental health counseling. In doing so, he highlighted that A.R.'s "impulsive nature . . . can be magnified if and when he abuses drugs or alcohol."

In 2003, A.R. was released from ADTC. In 2004, Thomas Calabrese drafted a report recommending A.R. be placed in "[l]ow [t]ier [t]wo and possibly [t]ier [o]ne" due to "low actuarial scores and current progression in treatment. . . ." A.R. initially minimized his behavior, but later acknowledged and described his sexual arousal to T.C. Indeed, A.R. admitted to "periodic sexual arousal to pre-pubescent, pubescent, [and] adolescent females." Like Dr. Frank and Dr.

A-0561-19

Siegel, Calabrese noted A.R.'s substance abuse problem and his history with suicidal ideations. Calabrese indicated that one of the precursors to A.R.'s sex-offending behavior was his alcohol and substance abuse. Based on Calabrese's report and A.R.'s RRAS score of forty-one, A.R. was classified into tier two with a moderate risk of re-offense.

A.R. married a woman in 2010 and has an eight-year-old daughter from that marriage. Pursuant to his parole obligations, A.R. was prohibited from having unsupervised contact with children, including his daughter.

In 2017, Calabrese submitted a subsequent letter indicating A.R.'s STATIC-99 score placed him in the low range of recidivism and noted his "current significant medical issues have help[ed] mitigated his risk to re-offend sexually." Calabrese highlighted that A.R. completed his mandated treatment; but, if he "uses alcohol/substances it is recommended that he enter a program that deals with those issues."

In 2018, Dr. James Reynolds conducted a psychosexual evaluation and risk assessment. Dr. Reynolds' indicated A.R. self-reported he "does not have a sexual attraction to underage persons." He also found A.R. "has not experienced harmful thoughts or intentions" and had no "history of self-mutilating or self-harmful behavior." Dr. Reynolds' gave A.R. an RRAS score total of thirty-seven

A-0561-19

points, placing "him at the low end of the moderate risk range." Based on STATIC-99-R, ACUTE-2007, and STABLE-2007 assessments, he concluded A.R. presented a "very low recidivism risk." Dr. Reynolds therefore recommended A.R. be relieved of his Megan's Law obligations and removed from CSL.

A.R. moved to terminate his obligation to register under Megan's Law, N.J.S.A. 2C:7-2(f), and terminate his CSL, N.J.S.A. 2C:43-6.4(c). On September 26, 2019, following oral argument, Judge Flynn issued a thirteen-page written opinion denying defendant's request. She concluded Dr. Reynolds' report contained "inaccuracies" and "inconsistencies," and that his conclusions were "general, rather than individualized." The judge noted that, contrary to the other experts' reports, Reynolds found A.R. was not sexually attracted to underage persons and had no history of self-harmful behavior. She determined A.R.'s mental health issues were "relatively overlooked in Dr. Reynolds' report."

With respect to the RRAS score, Judge Flynn found:

> . . . Dr. Reynolds['] zero points under factor eight regarding history of anti-social behavior is not accepted by the court; rather, the initial score of three, for moderate risk based upon limited history of anti-social behavior should be included. This would bring the current RRAS score to at least [forty].

6

> With further regard to the RRAS score, Dr. Reynolds states that his calculation of [thirty-seven] points puts the registrant on the cusp of low to moderate risk. However, the scale is clear: [thirty-seven] is in the moderate range, albeit the bottom of that range.

Judge Flynn held A.R. did not prove by a preponderance of the evidence that he was unlikely to threaten others' safety if released from his Megan's Law obligations. Likewise, she concluded A.R. did not prove by clear and convincing evidence that he is unlikely to threaten others' safety if released from CSL. The judge noted "[t]here is no evidence that [A.R.] is in continued treatment or takes medication in connection with his significant mental health issues, which should be considered in the risk determination." She also found A.R.'s alcohol and substance abuse history aggravated his unaddressed mental health issues. Citing Calabrese's report, the judge recognized A.R.'s substance abuse history and mental health issues acted as triggers to his sex-offending behaviors. In other words, "[i]f alcohol/substance abuse might trigger sexual re-offense, and a concern remains that he might relapse regarding alcohol/substances, then concern remains that such a relapse could trigger sexual re-offense."

Because the State conceded below that it has been more than fifteen years since A.R.'s release and that he remained offense-free during that period, the

A-0561-19

sole issue on appeal is whether A.R. met his burden in proving he was "not likely to pose a threat to the safety of others . . . ." We agree with Judge Flynn that A.R. failed to do so.

We review the judge's determination on a motion to terminate CSL for abuse of discretion. See In re J.W., 410 N.J. Super. 125, 130 (App. Div. 2009) (evaluating risk of re-offense under an abuse of discretion standard). An abuse of discretion occurs when the trial judge's "decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

A registrant may apply to terminate the Megan's Law registration obligations "upon proof that the person has not committed an offense within [fifteen] years following conviction or release from a correctional facility . . . and is not likely to pose a threat to the safety of others." N.J.S.A. 2C:7-2(f). "Relief from Megan's Law registration may be granted upon proof by a preponderance of the evidence that a person is not likely to pose a threat to the safety of others." In re J.M., 440 N.J. Super. 107, 116 (Law Div. 2014). Likewise, a defendant may be relieved of CSL where "the person has not committed a crime for [fifteen] years since the last conviction or release from

incarceration, whichever is later, and that the person is not likely to pose a threat to the safety of others if released from parole supervision." N.J.S.A. 2C:43-6.4(c). "However, a person requesting termination from CSL/PSL obligations must demonstrate the same evidence by satisfying the court by the higher burden of 'clear and convincing evidence.'" In re J.M., 440 N.J. Super. at 116.

The RRAS was "designed to provide prosecutors with an objective standard on which to base the community notification decision mandated by [Megan's Law] and to assure that the notification law is applied in a uniform manner throughout the State." In re C.A., 146 N.J. 71, 100-01 (1996). The RRAS "is used to assess whether a registrant's risk of reoffending is low, moderate or high." In re A.D., 441 N.J. Super. 403, 407 (App. Div. 2015); see also In re V.L., 441 N.J. Super. 425, 429 (App. Div. 2015) ("An overall score of [zero] to [thirty-six] places an offender in Tier [one]; [thirty-seven] to [seventy-three], in Tier [two]; and [seventy-four] to 111, Tier [three]."). "Although the Scale has not been empirically validated through scientific field studies, the factors that comprise the Scale have been shown to be the best indicators of risk of re-offense." In re C.A., 146 N.J. at 107. The RRAS is, however, "only one possible consideration" of many in determining a registrant's risk of re-offense. In re G.B., 147 N.J. 62, 78 (1996).

A-0561-19

Judge Flynn's reasons for discounting Dr. Reynolds' report are supported by the record. Furthermore, the trial judge may accept or reject an expert report and weight it appropriately. Maison v. N.J. Transit Corp., 460 N.J. Super. 222, 232 (App. Div. 2019); see also State v. S.N., 231 N.J. 497, 514-15 (2018) ("[R]egardless of whether the evidence is live testimony, a videotaped statement, or documentary evidence, deference is owed to the trial court's determinations of fact and credibility." (citing State v. S.S., 229 N.J. 360, 379 (2017))). Accordingly, we defer to the judge's credibility determination.

Based on this record, we conclude Judge Flynn's well-supported denial of A.R.'s request to terminate his registration requirements under Megan's Law and CSL was not an abuse of discretion. Although the RRAS may be helpful as an indicator of "risk of re-offense," judges should take a more holistic approach to evaluating a defendant's risk to the community under N.J.S.A. 2C:43-6.4(c) and N.J.S.A. 2C:7-2(f), In re C.A., 146 N.J. at 107. Judge Flynn did exactly that. After fully considering the record, she concluded A.R. failed to prove he was not likely to commit another sexual offense. The judge cited A.R.'s long history of substance and alcohol abuse, his seemingly unaddressed mental health issues,

A-0561-19

his proclivity for violence and angry outbursts, and his RRAS score.[4]  We discern no basis to overturn that decision.

We have carefully considered A.R.'s remaining arguments and conclude they lack sufficient merit to warrant discussion in a written opinion.  See R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] Dr. Reynold's RRAS score of thirty-seven, which the judge rejected, still put A.R. within the moderate risk of re-offense.

A-0561-19