# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1049-22

IN THE MATTER OF
REGISTRANT W.C.

_____

Argued February 27, 2024 – Decided March 18, 2024

Before Judges Gooden Brown and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. ML-19060034.

Joseph J. Rodgers argued the cause for appellant W.C.

Kimberly Page Will, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Jennifer Webb-McRae, Cumberland County Prosecutor, attorney; Holly Ann Fanelle, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Registrant W.C. appeals from the October 24, 2022 Law Division order denying his motion to terminate his obligation to register under Megan's Law, N.J.S.A. 2C:7-1 to -23, and for release from Community Supervision for Life

(CSL), N.J.S.A. 2C:43-6.4. We affirm, substantially for the reasons set forth in Judge Kevin T. Smith's well-reasoned written opinion.

In January 1997, registrant's aunt, who lived in California, reported her fifteen-year-old foster daughter T.W.[1] missing. T.W. also had run away from home the prior September to be with registrant, who was twenty-eight years old. They had known each other since T.W.'s foster placement into the aunt and uncle's home six years before.

The aunt believed T.W. was staying with registrant in his mother's house in New Jersey, but law enforcement learned he had been arrested at a motel in Delaware, where T.W. was staying with him. T.W. provided a statement to detectives confirming they had engaged in sexual intercourse on more than one occasion between November 1996 and January 1997. Registrant was charged with sex offenses and child endangerment in both New Jersey and Delaware.

A Gloucester County grand jury indicted registrant on charges of second-degree sexual assault, N.J.S.A. 2C:14-2(c)(4); and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1). On December 2, 1997, registrant pleaded guilty to third-degree endangering the welfare of a child by sexual conduct. On February 20, 1998, he was sentenced to thirty months' non-

---

[1] Initials are used to protect the identity of the victim. R. 1.38-3(c)(12).

A-1049-22

custodial probation, concurrent with his Delaware sentence, and to comply with Megan's Law and CSL. He completed his probationary term in August 2000.

On June 10, 2022, registrant filed a motion to terminate his Megan's Law registration obligations pursuant to N.J.S.A. 2C:7-2(f) and for release from CSL pursuant to N.J.S.A. 2C:43-6.4(c). The motion was supported by a psychological evaluation conducted by Dr. Kelly White and was opposed by the State. The judge heard arguments of counsel and denied the motion in a written opinion and order dated October 24, 2022.

After considering the nature and circumstances of the underlying conviction, the judge noted registrant's current Registrant Risk Assessment Scale (RRAS) score was a twenty-one, which placed him in the mid-range of Tier One, low risk. The court then addressed Dr. White's report, noting her findings on the assessments she administered to registrant:

> On the STATIC-99R test[,] which is designed to predict risk of future sexual offenses, [registrant] was placed in a moderate risk category. On the STABLE-2007, which predicts recidivism, [registrant] did not display sexual preoccupation or deviant sexual preference. On the ACUTE-2007, which predicts the risk of a sexual offense while on community supervision, [registrant] scored a low priority on the risk of sex/violence and moderate, regarding general recidivism risk. And on the PPI-R test, [registrant] was found to exhibit high emotional stability, low for stress intolerance. Based

3

on these four tests, Dr. White concluded [registrant] is not an ongoing threat to the community.

The judge found Dr. White's recommendation to terminate Megan's Law and for release from CSL "concerning" for several reasons. First, Dr. White acknowledged "[registrant] describe[d] his offense and lack of responsibility for his actions despite treatment completion. He minimized his role and placed blame on the victim," which she found "indicative of his results on the administered personality assessment." The judge found this concern echoed the State's objection to the motion.

The judge also found Dr. White's conclusion registrant did not pose a threat to the safety of others was inconsistent with the assessment scores. Although Dr. White characterized the scores to be a low or medium risk to re-offend either sexually or violently, the judge noted the STATIC-99, STABLE-2007 and general recidivism section of the ACUTE-2007 all indicated a moderate risk. The only low score was the sex/violence risk of the ACUTE-2007. In addition, while the PPI-R assessment was in normal limits, registrant "scored close to the standard deviation for [c]old-heartedness."

This cold-heartedness assessment was "most concerning" to the judge. As the judge explained, "Cold-heartedness is defined as 'a person's inability to experience either positive or negative emotions, measures closed mindedness to

fantasies and non[-]traditional value systems and predicts one's ability to act in a deviant or sneaky manner.'" The judge continued:

> This tendency to exhibit cold-heartedness is prevalent in a conversation between [registrant] and Dr. White. In the conversation, [registrant] stated his charge was "different than others, it was a one-time thing" . . . despite being reminded it was not a one-time occurrence. Moreover, [registrant] later stated he believed T.W. and [he] were in a relationship and did not accept responsibility for his actions, even after "successfully" completing treatment.

Thus, the judge found Dr. White's positive findings and recommendation conflicted with the assessments and the concerning statements he made during the evaluation interview.

The judge also addressed counsel's offer during oral argument to have registrant return to Dr. White for re-evaluation to address the State's concerns:

> During oral argument, counsel stated, "unfortunately, my client now gets how he should have handled some of these things." This suggests [registrant] should have answered certain questions or inquiries in a way that may have painted him in a better light. Counsel further indicated, "since the report came out, he . . . gets it."

The judge noted that "[t]rained and experienced professionals like Dr. White, with the benefit of the actuarial tools utilized, attempt to get an accurate picture of the status of individuals" they are evaluating. "Honesty on the part of those being evaluated is critical although there are certain parts of these tools

5

designed to ferret out efforts to make those being evaluated look better in the eyes of the evaluator." The judge found that the evaluation showed registrant's "unguarded moments of truth," which included placing "blame on the victim" and "see[ing] himself as having been in a relationship with T.[W.], a [fourteen]-year-old child half his age at the time." These candid statements underpinned Dr. White's concerns about his lack of responsibility. Based on those concerns, the judge determined that, despite his purportedly successful treatment and the years that had elapsed since the offense, registrant "still doesn't get it."

Accordingly, the judge found registrant remained a threat to the safety of others and therefore failed to meet his burden to terminate his Megan's Law registration obligation by a preponderance of the evidence and for release from CSL by clear and convincing evidence.

Because there is no dispute it has been more than fifteen years since registrant's conviction and he remained offense-free during that period, the sole issue on appeal is whether he met his burden to prove he was "not likely to pose a threat to the safety of others." We agree with Judge Smith that he failed to do so.

We review the judge's determination on a motion to terminate Megan's Law registration and CSL for abuse of discretion. See In re J.W., 410 N.J. Super.

6

125, 130 (App. Div. 2009).  An abuse of discretion occurs when the trial judge's "decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

A registrant may apply to terminate the Megan's Law registration obligations "upon proof that the person has not committed an offense within [fifteen] years following conviction or release from a correctional facility . . . and is not likely to pose a threat to the safety of others."  N.J.S.A. 2C:7-2(f). "Relief from Megan's Law registration may be granted upon proof by a preponderance of the evidence that a person is not likely to pose a threat to the safety of others."  In re J.M., 440 N.J. Super. 107, 116 (Law Div. 2014).

Likewise, a defendant may be relieved of CSL where "the person has not committed a crime for [fifteen] years since the last conviction or release from incarceration, whichever is later, and that the person is not likely to pose a threat to the safety of others if released from parole supervision."  N.J.S.A. 2C:43-6.4(c).  "However, a person requesting termination from CSL . . . obligations must demonstrate the same evidence by satisfying the court by the higher burden of 'clear and convincing evidence.'"  J.M., 440 N.J. Super. at 116.

A-1049-22

The RRAS was "designed to provide prosecutors with an objective standard on which to base the community notification decision mandated by [Megan's Law] and to assure that the notification law is applied in a uniform manner throughout the State." In re C.A., 146 N.J. 71, 100-01 (1996). The RRAS "is used to assess whether a registrant's risk of reoffending is low, moderate or high." In re A.D., 441 N.J. Super. 403, 407 (App. Div. 2015); see also In re V.L., 441 N.J. Super. 425, 429 (App. Div. 2015) ("An overall score of 0 to 36 places an offender in Tier 1; 37 to 73, in Tier 2; and 74 to 111, Tier 3."). "Although the Scale has not been empirically validated through scientific field studies, the factors that comprise the Scale have been shown to be the best indicators of risk of re-offense." C.A., 146 N.J. at 107. The RRAS is, however, "only one possible consideration" of many in determining a registrant's risk of re-offense. In re G.B., 147 N.J. 62, 78 (1996).

Registrant argues the judge erred in giving insufficient weight to both the RRAS and a psychological evaluation conducted in 1997, and in affording too much weight to the assessment scores in Dr. White's evaluation. However, the trial judge may accept or reject an expert report and decide the weight to afford it. Maison v. N.J. Transit Corp., 460 N.J. Super. 222, 232 (App. Div. 2019); see also State v. S.N., 231 N.J. 497, 514-15 (2018) ("[R]egardless of whether the

evidence is live testimony, a videotaped statement, or documentary evidence, deference is owed to the trial court's determinations of fact and credibility." (citing State v. S.S., 229 N.J. 360, 379 (2017))). Accordingly, we defer to the judge's credibility determination and the weight he assigned to the information and evaluation before him.

Based on this record, we conclude the judge's well-supported denial of registrant's request to terminate his Megan's Law obligations and for release from CSL was not an abuse of discretion. After fully considering the record, he determined registrant failed to prove he was not likely to pose a threat to the safety of others. The judge cited assessment scores which largely indicated a moderate risk of recidivism, the score nearing cold-heartedness and, significantly, despite completing treatment and having years to reflect on his conduct, registrant's candid display of minimizing his role and blaming the victim. We discern no basis to overturn that decision.

We have carefully considered registrant's remaining arguments and conclude they lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9

A-1049-22