**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3541-14T1

IN THE MATTER OF
REGISTRANT J.S.

_____

**APPROVED FOR PUBLICATION**

**February 23, 2016**

**APPELLATE DIVISION**

Submitted October 26, 2015 – Decided February 23, 2016

Before Judges Lihotz, Fasciale and Nugent.

On appeal from Superior Court of New Jersey, Law Division, Essex County, ML No. 01070068.

Carolyn A. Murray, Essex County Prosecutor, attorney for appellant State of New Jersey (Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Maynard & Sumner, LLC, attorneys for respondent J.S. (James H. Maynard, on the brief).

The opinion of the court was delivered by

LIHOTZ, P.J.A.D.

The State appeals from an April 2, 2015 order terminating petitioner's obligations under the Registration and Community Notification Law, N.J.S.A. 2C:7-1 to -11, also known as Megan's

Law.[1]  The same order released petitioner from community supervision for life (CSL), N.J.S.A. 2C:43-6.4,[2] and removed petitioner's name from the State Sex Offender Registry. The judge was asked to interpret the statute's requirement that termination from the registration requirements may be ordered "upon proof that the person has not committed an offense within 15 years following conviction." N.J.S.A. 2C:7-2(f). He found petitioner satisfied N.J.S.A. 2C:7-2(f), calculating the time period began upon the entry of defendant's guilty plea. At the State's request the order was stayed pending appeal. The State now argues:

> "Conviction" in N.J.S.A. 2C:7-2(f) means the date the judgment of conviction was entered. That section permits relief after 15 years of successful compliance with Megan's Law's registration requirements, which do not go into effect until the registrant is sentenced and the judgment of conviction entered.

We agree and reverse.

---

[1]  Megan's Law requires "prescribed categories of sex offenders register with law enforcement agencies through a central registry maintained by the Superintendent of State Police. N.J.S.A. 2C:7-2(a)(1), 4(d)." In re Registrant N.B., 222 N.J. 87, 89 (2015).

[2]  "A 2003 amendment replaced all references to 'community supervision for life' with 'parole supervision for life.'" See L. 2003, c. 267, § 1 (eff. Jan. 14, 2004)." State v. Perez, 220 N.J. 423, 429 (2015).

On January 14, 2000, petitioner pled guilty to two counts of third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a), resulting from the assault of a thirteen-year-old child. The probationary sentence, imposed on November 13, 2000, included mandatory compliance with Megan's Law and CSL. In early 2015, petitioner moved to terminate his Megan's Law and CSL obligations. The applicable provision for seeking termination of the Megan's Law registration requirements, states:

> Except as provided in subsection g.[3] of this section, a person required to register under this act may make application to the Superior Court of this State to terminate the obligation upon proof that the person has not committed an offense within 15 years following conviction or release from a correctional facility for any term of imprisonment imposed, whichever is later, and is not likely to pose a threat to the safety of others.
>
> [N.J.S.A. 2C:7-2(f).]

The State agreed petitioner met all statutory requirements, except the fifteen-year period of compliance. Over the State's objection, the judge accepted petitioner's position the fifteen-

---

[3] "N.J.S.A. 2C:7-2(g) prohibits persons convicted, adjudicated delinquent, or acquitted by reason of insanity for more than one sex offense as defined in N.J.S.A. 2C:7-2(b), or aggravated sexual assault, N.J.S.A. 2C:14-2(a), or sexual assault, N.J.S.A. 2C:14-2(c)(1), from making application to terminate their registration obligations." In re Registrant A.D., 441 N.J. Super. 403, 406 n.3 (App. Div. 2015).

year clock commenced on the day he pled guilty.  Accordingly, the judge ordered termination of defendant's compliance with Megan's Law and CSL.

The matter was initially listed on our excessive sentencing oral argument calendar.  R. 2:9-11.  We granted the State's motion for transfer to a plenary calendar.  The question is a legal one, which we review de novo.  State v. Revie, 220 N.J. 126, 132 (2014).

When we interpret a statute, "[t]he overriding goal is to determine as best we can the intent of the Legislature, and to give effect to that intent."  State v. Robinson, 217 N.J. 594, 604 (2014) (quoting State v. Hudson, 209 N.J. 513, 529 (2012)).  First, we consider the plain language of the statute.

> In the construction of the laws and statutes of this state, both civil and criminal, words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the [L]egislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.
>
> [State v. Hupka, 203 N.J. 222, 232 (2010) (quoting N.J.S.A. 1:1-1).]

We apply common sense in deducing the meaning of the Legislature's chosen language, drawing inferences based on the statute's structure and composition.  Id. at 231-32.  See also

State v. Gandhi, 201 N.J. 161, 180 (2010) (quoting State v. Thomas, 166 N.J. 560, 567 (2001)) ("Ordinarily, when a statute's language appears clear, 'we need delve no deeper than the act's literal terms to divine the Legislature's intent.'").

Second, "[i]f a plain-language reading of the statute 'leads to a clear and unambiguous result, then our interpretive process is over.'" Hupka, supra, 203 N.J. at 232 (quoting Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195-96 (2007)). On the other hand, if we find an ambiguity in the statutory language, we turn to extrinsic evidence. Ibid. When such evidence is needed, we look to a variety of sources, "'such as the statute's purpose, legislative history, and statutory context to ascertain the legislature's intent.'" Thomas, supra, 166 N.J. at 567 (quoting Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 323 (2000)). See also State v. Crawley, 187 N.J. 440, 453 (resorting to legislative history for extrinsic aid in interpretation of statute), cert. denied, 549 U.S. 1078, 127 S. Ct. 740, 166 L. Ed. 2d 563 (2006).

Third, "[w]hen construing a statute in which 'the Legislature has clearly defined a term, the courts are bound by that definition.'" A.D., supra, 441 N.J. Super. at 410 (quoting Febbi v. Bd. of Review, 35 N.J. 601, 606 (1961)). We also may consider "not only the particular statute in question, but . . .

the entire legislative scheme of which it is a part." <u>Kimmelman v. Henkels & McCoy, Inc.</u>, 108 <u>N.J.</u> 123, 129 (1987).

This case turns on the meaning of "conviction," as it is used to define the commencement of the requisite fifteen-year period necessary for a petitioner to seek termination of Megan's Law and CSL registration requirements.  The parties' positions are at odds.  Petitioner asserts he was convicted on January 14, 2000, the date he entered his plea.  The State asserts petitioner was convicted on November 13, 2000, when the judgment of conviction imposed, in the first instance, Megan's Law and CSL requirements.

The trial judge relied on <u>State v. Baker</u>, 133 <u>N.J. Super.</u> 398, 399-400 (App. Div. 1975), which distinguished "conviction" from "judgment" when reviewing the predecessor statute to <u>N.J.R.E.</u> 609.  The Appellate Division in <u>Baker</u> stated:

> "[t]he ordinar[]y legal meaning of conviction, when used to designate a particular stage of a prosecution triable by a jury, <u>is the confession of the accused in open court</u>, or the verdict returned against him by the jury, which ascertains and publishes the fact of his guilt; while 'judgment' or 'sentence' is the appropriate word to denote the action of the court * * * declaring the consequences to the convict of the fact thus ascertained."
>
> [<u>Id.</u> at 401 (quoting <u>Commonwealth v. Lockwood</u>, 109 <u>Mass.</u> 323 (Mass. 1872)).]

We are mindful that generally, "when the Legislature uses words in a statute that previously have been the subject of judicial construction, the Legislature will be deemed to have used those words in the sense that has been ascribed to them." Thomas, supra, 166 N.J. at 567-68. However, this rule is not absolute and "'it is possible to interpret an imprecise term differently in two separate sections of a statute which have different purposes.'" Id. at 568 (quoting 2A Norman J. Singer, Statutes and Statutory Construction § 46.06, at 194 (6th ed. 2000)). Following our review, based on the reasons we discuss, we are convinced the Legislature did not intend to import Baker's definition of conviction when adopting N.J.S.A. 2C:7-2(f).

When interpreting a statute, we start with the principle that context matters. This court in Baker determined what constituted a permissible "prior conviction" to be used to attack the credibility of the State's witness. Baker, supra, 133 N.J. Super. at 399-400. On appeal, the defendant argued the trial judge erred in limiting cross-examination of the witness, after determining a conviction cannot be used to impeach the witness before judgment was entered. Id. at 400. Reviewing N.J.S.A. 2A:81-12, which has since been repealed, we concluded the statutory provision allowing introduction of a "conviction"

of a crime for the purpose of affecting the credibility of a witness was not limited to final judgments of conviction.  <u>Id.</u> at 401.  Rather, "<u>the logic of the situation</u> compels the conclusion that a plea of guilty is as relevant as a judgment after sentence.  The witness' credibility is equally affected by both and the sentence adds no more taint to that factor than is implicit in a plea of guilty."  <u>Id.</u> at 401-02 (emphasis added).

We also note <u>Baker</u> preceded adoption of the Criminal Code in 1978, which provides the framework for the statute now under review.  Standing alone, "conviction" is not a defined term in the Code.  When a provision is subject to differing interpretations, "it shall be interpreted to further the general purposes [of the Criminal Code] and the special purposes of the particular provision involved."  <u>N.J.S.A.</u> 2C:1-2(c).  <u>See also</u> <u>State v. Shaw</u>, 131 <u>N.J.</u> 1, 14 (1993).  Thus, the context in which the word "conviction" is used in the current Code, generally and specifically, weighs heavily when discerning legislative intent.

Megan's Law, which is a legitimate regulatory measure, includes a pronouncement of its public safety objectives.  <u>Doe v. Poritz</u>, 142 <u>N.J.</u> 1, 73 (1995).  In adopting the law and its companion legislation, <u>see</u> <u>id.</u> at 25 n.6 (listing related legislation adopted contemporaneously with Megan's Law), the

Legislature found: "The danger of recidivism posed by sex offenders and offenders who commit other predatory acts against children . . . require a system of registration that will permit law enforcement officials to identify and alert the public when necessary for the public safety." N.J.S.A. 2C:7-1(a). See also Poritz, supra, 142 N.J. at 25 (explaining Megan's Law is designed "to aid law enforcement in apprehending sex offenders and to enable communities to protect themselves from such offenders"); In re Registrant C.A., 146 N.J. 71, 80 (1996) (reciting the sex offender registration law seeks "to protect the community from the dangers of recidivism by sexual offenders"). All of Megan's Law's provisions, "the requirements for registration, the provisions for notification, the Tiers, and the many other related parts, are tied together by the statement of legislative purpose . . . ." Poritz, supra, 142 N.J. at 25. This objective must be respected and preserved when we construe the intent of the statutory language.

The registration requirements of Megan's Law, as well as related legislation adopted at the same time, including CSL, are imposed at sentencing. See N.J.S.A. 2C:7-2 (stating registration requirements); see also N.J.S.A. 2C:44-8 ("When a defendant is found guilty of a sex offense, the court may, at the time of sentencing and in addition to any other disposition

authorized by law, order the continuation of a prior order or condition of bail that restricts the defendant's contact with the victim, or enter an order imposing such restrictions at the time of sentencing."). The registration requirement is presumed to be for life. Poritz, supra, 142 N.J. at 21.

N.J.S.A. 2C:7-2(a)(1) requires "[a] person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sex offense . . . shall register as required in subsections c. and d. of this section." The term "convicted" was chosen and paired with other events that transpire when a factfinder determines guilt or innocence interchangeably. This same terminology "convicted, adjudicated delinquent or found not guilty by reason of insanity" was not repeated in subsection (f).

Zeroing in on the language of N.J.S.A. 2C:7-2(f), the provision starts with the words: "a person required to register under this act . . . ." As noted, the event compelling registration occurs, not upon entering a plea, but at sentencing. The word "conviction," used as the starting point for the offense-free period, requires an offender to prove he or she "has not committed an offense within 15 years following conviction or release from a correctional facility for any term of imprisonment imposed, whichever is later . . . ." Ibid.

Thus, conviction is coupled with release from custody, and the time period mandated is the longer of the two events. Reading the statute, we conclude its design signals a desire to measure the offense-free time frame against fifteen years of compliance with the registration requirements. See also Poritz, supra, 142 N.J. at 25 ("Our Legislature could reasonably conclude that risk of reoffense can be fairly measured, and that knowledge of the presence of offenders provides increased defense against them. Given those conclusions, the system devised by the Legislature is appropriately designed to achieve the laws' purpose of protecting the public.").

Our conclusion is further supported by the use of similar language when allowing termination of CSL, which provides:

> A person sentenced to a term of parole supervision for life may petition the Superior Court for release from that parole supervision. The judge may grant a petition for release from a special sentence of parole supervision for life only upon proof by clear and convincing evidence that the person has not committed a crime for 15 years since the last conviction or release from incarceration, whichever is later, and that the person is not likely to pose a threat to the safety of others if released from parole supervision.
>
> [N.J.S.A. 2C:43-6.4(c).]

The provision adopted contemporaneously with Megan's Law mirrors N.J.S.A. 2C:7-2(f) and permits an offender the opportunity to be

released from mandatory supervision upon completion of the fifteen-year offense free period. Naturally, the use of "[a] person sentenced" invokes entry of a judgment of conviction. Logically, the time period would not commence from the date of entry of a guilty plea. We find it anomalous to suggest the Legislature intended one time frame for termination of Megan's Law registration and a different time frame for release from CSL.

When considering the statutory scheme as a unitary whole, in light of its public safety purpose, we conclude the import of the statutory language requires, as a prerequisite for requesting termination from the registration requirements, an offender demonstrate a fifteen-year period of being offense-free and Megan's Law compliant. This can only occur after the registration requirements are imposed.

We agree exacting precision in drafting statutes would obviate the need for judicial interpretation, such that had the Legislature used the term "judgment of conviction," rather than "conviction," any debate would have unmistakably ended. However, defendant's illustrations plugging a single definition into various statutes which use the word "conviction" are not persuasive precisely because this approach ignores the statutory context vital to understanding the Legislature's meaning. We

reject this attempt to isolate the single word "conviction," without reference to its use in the statute under consideration. For all the reasons stated, we are not persuaded the Legislature's failure to include "judgment of" to accompany "conviction," in N.J.S.A. 2C:7-2(f), as well as N.J.S.A. 2C:43-6.4(c), was deliberate, as suggested by defendant. Rather, we are persuaded the context defining the fifteen-year period for termination of Megan's Law and CSL compliance commences upon imposition of the registration requirements, not before.

As of this date, the required fifteen years has elapsed from the date petitioner became subject to Megan's Law and CSL. Recognizing "'[a]n issue is "moot" when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy[,]'" Greenfield v. N.J. Dep't of Corrs., 382 N.J. Super. 254, 257-58 (App. Div. 2006) (quoting New York S. & W. R. Corp. v. State Dep't of Treasury, Div. of Taxation, 6 N.J. Tax 575, 582 (Tax 1984), aff'd 204 N.J. Super. 630 (App. Div. 1985)), we conclude mootness does not preclude our review because the judge must actually review whether petitioner met the requirement to be offense-free, see A.D., supra, 441 N.J. Super. at 413, from March 31, 2015 through November 13, 2015. We also conclude the issue on appeal is an important matter of public interest and capable of repetition warranting our review.

City of Plainfield v. N.J. Dept. of Health & Senior Servs., 412 N.J. Super. 466, 484 (App. Div.), certif. denied, 203 N.J. 93 (2010).

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION