# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3863-19

IN THE MATTER OF
REGISTRANT P.C.

_____

Argued September 27, 2021 – Decided October 19, 2021

Before Judges Mayer and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. ML-99-13-0050.

Michael C. Woyce, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Michael C. Woyce, on the brief).

Monica do Outeiro, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Lori Linskey, Acting Monmouth County Prosecutor, attorney; Monica do Outeiro, of counsel and on the brief).

PER CURIAM

In this appeal, P.C. challenges that portion of the Law Division's June 17, 2020 order denying his motion to be relieved of his registration requirement

under the Registration and Community Notification Law, N.J.S.A. 2C:7-1 to -11, commonly referred to as Megan's Law. We have considered P.C.'s argument in light of the record and applicable law and affirm.

I.

On November 22, 1998, P.C. was arrested and later charged with two counts of second-degree sexual assault, N.J.S.A 2C:14-2(c)(4), and two counts of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). He pled guilty on March 15, 1999 to a single count of endangering and as reflected in the September 30, 1999 judgment of conviction, was sentenced to two years of probation, community supervision for life ("CSL") pursuant to N.J.S.A. 2C:43-6.4 and directed to comply with the registration requirements of Megan's Law.

On May 21, 2001, approximately a year and a half after his conviction, the police arrested P.C. for failing to register as a convicted sex offender contrary to N.J.S.A. 2C:7-2(a). He was later indicted and pled guilty on October 9, 2001 to failure to register, a fourth-degree offense, and violation of his probation. The court sentenced P.C. in accordance with the plea agreement to a nine-month concurrent term of incarceration on each charge and issued separate January 30, 2002 judgments of conviction. In determining that the sentence was "fair and in the interest of justice" the court concluded that mitigating factor ten,

a particular likelihood of responding affirmatively to probationary treatment, was no longer applicable. P.C. has not committed any further offenses since his 2002 release.

On April 1, 2020, P.C. filed a motion seeking to be relieved of his Megan's Law registration requirements under N.J.S.A. 2C:7-2(f) (subsection (f))[1] and CSL requirement pursuant to N.J.S.A. 2C:43-6.4(c). In a June 17, 2020 order and oral opinion, the court granted in part and denied in part P.C.'s motion. As to his Megan's Law obligations, the court rejected his argument that the fifteen-year period prescribed by subsection (f) began to run following his 2002 release from incarceration. Instead, relying on In the Matter of H.D., 241 N.J. 412 (2020), the court held that "under the plain language of subsection (f), a [fifteen]-year period during which an eligible registrant must remain offense free to qualify for registration relief commences upon his or her conviction or

_____

[1] To provide context we set forth the relevant language of subsection (f):

> a person required to register under this act may make application to the Superior Court of this State to terminate the obligation upon proof that the person has not committed an offense within [fifteen] years following conviction or release from a correctional facility for any term of imprisonment imposed, whichever is later, and is not likely to pose a threat to the safety of others.

release from confinement [for] the sex offense that [resulted in] his or her registration requirement," and that the fifteen-year period does not "restart following a new offense within [fifteen] years [of] the predicate sex offense."

The court also cited our opinion In re J.S., 444 N.J. Super. 303, 313 (App. Div. 2016), where we held that "the fifteen-year period for termination of Megan's Law . . . compliance [commences upon] imposition of the registration requirement." In sum, the court determined that P.C.'s "[fifteen]-year requirement . . . commenced with his sentencing in 1999 and ended with his 2002 . . . conviction for failure to register" and therefore, P.C. was "ineligible for termination of his Megan['s] Law requirements."

The court concluded, however, that P.C. was eligible to be relieved of his CSL requirement under the terms of N.J.S.A. 2C:43-6.4(c).[2] The court explained that relief from CSL obligations may be granted upon "clear and convincing evidence that the person has not committed a crime for [fifteen] years since the last conviction or release from incarceration, whichever is later, and the person is not likely to pose a threat to the safety of others if released

_____

[2]  "A 2003 amendment to N.J.S.A. 2C:43-6.4 replaced all references to 'community supervision for life' with 'parole supervision for life.'" State v. Perez, 220 N.J. 423, 437 (2015). As noted, the court relieved P.C. of his CSL obligations and the State has not appealed that ruling nor does the State contend that P.C. is "likely to pose a threat to the safety of others." N.J.S.A. 2C:7-2(f).

A-3863-19

from parole." Ibid. (emphasis added). On this point, the court found that P.C. had remained conviction free for over fifteen years following his 2002 release.

Further, the court determined that P.C. provided clear and convincing evidence that he was not likely to pose a threat to the safety of others if released from supervision. In making that finding, the court relied, in part, upon a Psychosexual Evaluation and Actuarial Risk Assessment prepared by Dr. James R. Reynolds, an expert in the field of sex offender risk assessment, which opined within a reasonable degree of psychological certainty that P.C. "is not likely to commit another sexual offense," "does not present a risk of harm to others," and would not pose a greater risk of harm if the court relieved him of his CSL and Megan's Law obligations. The court also noted that P.C. "appears to have a stable family life, positive support network, sobriety, and a steady employment history" and that "[t]he State . . . presented no evidence contradicting Dr. Reynold's expert opinion."

This appeal followed in which P.C. challenges the court's interpretation of subsection (f) on the same grounds he asserted below. Relying on State v. Kearns, 393 N.J. Super. 107 (App. Div. 2007) and State v. Wilson, 226 N.J. Super. 271 (App. Div. 1988), he argues that his concurrent nine-month sentence imposed for failure to register and violation of probation relates back to his

underlying 1999 endangering conviction and, thus, his 2002 release from his "term of imprisonment," rather than his 1999 judgment of conviction, triggers the fifteen-year period referenced in subsection (f). We disagree with P.C.'s interpretation and concur with the court that his subsequent 2002 conviction for failing to register rendered him ineligible to be relieved of his Megan's Law registration obligations.

## II.

We "review a trial court's construction of a statute de novo." State v. Revie, 220 N.J. 126, 104 A.3d 221 (2014) (citations omitted). A "trial court's interpretation of the law and the consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

When interpreting the meaning of a statute "the best indicator of [the Legislature's] intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citing Frugis v. Bracigliano, 177 N.J. 250, 280 (2003)). "We ascribe to the statutory words their ordinary meaning and significance." Ibid. (quoting Lane v. Holderman, 23 N.J. 304, 313 (1957)). "[T]he words of a statute must be read in their context and with a view to their place in the overall

statutory scheme." Davis v. Michigan Dep't of Treasury, 489 U.S. 803, 809 (1989). Finally, we interpret statutes to avoid "manifestly absurd result[s], contrary to public policy." See Hubbard ex rel. Hubbard v. Reed, 168 N.J. 387, 392-93 (2001) (internal quotes and citations omitted).

Megan's Law requires that "[a] person who has been convicted . . . for commission of a sex offense . . . shall register" as a sex offender. N.J.S.A. 2C:7-2(a)(1). As noted, a person may petition the Superior Court to be removed from Megan's Law requirements if: 1) "the person has not committed an offense within [fifteen] years following conviction or release from a correctional facility"; and 2) the person "is not likely to pose a threat to the safety of others." N.J.S.A. 2C:7-2(f). "The registration provision of Megan's Law was enacted to 'permit law enforcement officials to identify and alert the public when necessary for the public safety,' and 'provide law enforcement with additional information critical to preventing and promptly resolving incidents involving sexual abuse and missing persons.'" In re N.B., 222 N.J. 87, 94 (2015) (quoting N.J.S.A. 2C:7-1).

The trigger date upon which the fifteen-year period referenced in subsection (f) commences was addressed by our court in In re J.S., 444 N.J. Super. at 313 and the Supreme Court in H.D., 241 N.J. at 421-23. In In re J.S.,

7

we expressly held that the fifteen-year period prescribed in subsection (f) commences "upon the imposition of the registration requirements." In re J.S., 444 N.J. Super. at 313. We stated further that the statutory "design signals a desire to measure the offense-free time frame against fifteen years of compliance with the registration requirements." Id. at 312.

In H.D., the Supreme Court characterized subsection (f) as "unambiguous" and explained that it "plainly refers to the conviction or release that triggers the registration requirement." H.D., 241 N.J. at 421. The Court reasoned that by using similar language, including the term "conviction," in subsection (f) and the registration mandate in subsection (c), "the Legislature tethered the registration relief offered in subsection (f) to the same underlying sex offense that marked the starting point of the registration requirement" and held that "[u]nder the plain language of subsection (f), the fifteen-year period during which an eligible registrant must remain offense-free to qualify for registration relief commences upon his or her conviction or release from confinement for the sex offense that gave rise to his or her registration requirement." Id. at 421, 23 (emphasis added). Finally, the Court stated that "the [registration] mandate commences upon conviction of a predicate offense for those 'under supervision in the community on probation.'" Ibid. (quoting N.J.S.A. 2C:7-2(c)(1)).

P.C.'s argument is contrary to a plain reading of N.J.S.A. 2C:7-2(f) and the holdings of H.D. and In re J.S. H.D., 241 N.J. at 421; In re J.S., 444 N.J. Super. at 313. His failure to register was not a mere violation of probation but was an independent offense and resulted in a separate judgment of conviction. Because that offense occurred within fifteen years of the imposition of P.C.'s initial registration mandate, it extinguished his opportunity for relief under subsection (f).

P.C.'s interpretation of subsection (f) is also incompatible with the protections that Megan's Law was intended to advance and promotes an absurd result contrary to public policy. See Hubbard ex rel. Hubbard, 168 N.J. at 392-93; In re N.B., 222 N.J. at 94; N.J.S.A. 2C:7-1. Indeed, if we were to accept P.C.'s argument, a convicted sex offender required to register under Megan's Law could commit a separate offense while serving a probationary term and remain eligible to be relieved under subsection (f), thereby treating that new conviction as if it never occurred. The Legislature clearly did not intend to permit defendants who commit new offenses soon after their initial sex offense to be relieved of their registration requirements.

Under the circumstances here, P.C.'s fifteen-year period commenced on September 30, 1999, when his registration requirement was imposed. H.D., 241

9

N.J. at 421; In re J.S., 444 N.J. Super. at 312-13.  His opportunity to be relieved of that requirement terminated on January 30, 2002, when he was convicted of failing to register.  As we held in In re A.D., the term "offense" as used in subsection (f) means "a crime, disorderly persons offense, or petty disorderly persons offense."  In re A.D., 441 N.J. Super. 403, 05, 13 (App. Div. 2015).  Contrariwise, a violation of probation is not itself a crime.  See State v. Hyman, 236 N.J. Super. 298, 301 (App. Div. 1989).

P.C. relies on Kearns and Wilson for the proposition that sentences imposed for probationary violations are "focus[ed] on the original offense." Kearns, 393 N.J. Super. at 110-11; Wilson, 226 N.J. Super. at 275.  From this basic proposition, he concludes that his "term of imprisonment" completed in 2002 for his probation violation, relates back to the 1999 conviction, and represents the correct trigger date for commencement of the fifteen-year period under subsection (f).  P.C.'s reliance on those cases is misplaced.

Unlike the defendants in Kearns and Wilson, P.C.'s violation of probation was triggered by a standalone fourth-degree offense.  That offense was distinct from his 1999 conviction and his resulting sentence, while concurrent to his probationary violation, was not for the "sex offense that gave rise to his . . . registration requirement," see H.D., 241 N.J. at 423, and P.C. therefore finds no

10

refuge in subsection (f)'s "term of imprisonment" language. In this regard, not only did the court issue separate judgments of conviction, but P.C.'s conviction for failing to register also informed the court's consideration as to the ultimate sentence imposed for P.C.'s parole violation. Whatever merit there is to such an argument as it relates to a registrant who for some undisclosed reason would seek a later trigger date (and therefore an extended period of offense-free conduct) based on a resentencing and completion of a "term of imprisonment" for merely violating the terms of a probationary sentence, it has no applicability to a registrant, like P.C., who committed an independent offense within fifteen years of his initial Megan's Law registration mandate.

To the extent we have not addressed any of defendant's remaining arguments, it is because we have concluded they are of insufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11                                                                      A-3863-19