**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0807-24

JERMAINE C. SPENCE, in his
own right, and JERMAINE C.
SPENCE, as administrator of the
Estate of PAMELA WRIGHT,

     Plaintiff-Appellant,

v.

HACKENSACK MERIDIAN
HEALTH, INC. and
HACKENSACK UNIVERSITY
MEDICAL CENTER,

     Defendants-Respondents.

_____

Submitted February 26, 2025 – Decided April 8, 2025

Before Judges Currier, Marczyk, and Torregrossa-O'Connor.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-0106-24.

Jermaine C. Spence, appellant pro se.

Ruprecht Hart Ricciardulli & Sherman, LLP, attorneys
for respondents (Brion D. McGlinn, on the brief).

PER CURIAM

While hospitalized at Hackensack University Medical Center, decedent Pamela Wright was declared brain dead and died shortly after defendants removed her from life-supporting devices. Plaintiff Jermaine Spence (Wright's son), instituted suit against defendants individually and as the administrator of Wright's estate, alleging violations of the New Jersey Declaration of Death Act (Act), N.J.S.A. 26:6A-1 to -8, and asserting other common law causes of action including negligence and wrongful death.

Defendants moved for dismissal under Rule 4:6-2(e), arguing the Act does not permit a private cause of action for damages. The trial court agreed and dismissed the complaint, concluding the statutory text of the Act does not provide for a private cause of action either explicitly or implicitly and because all of plaintiff's common law causes of action were directly related to allegations under the Act, they too were barred.

After granting leave to appeal, we agree the Act does not provide for a private cause of action. However, when viewing plaintiff's claims in the light most favorable to him, cognizable common law causes of action are suggested from the presented facts. Therefore, it was premature to dismiss the complaint

2

as to those claims at this stage. We vacate the dismissal of the common law claims and remand for further proceedings.

Wright received medical care from defendants during a hospitalization in March 2022. Plaintiff asserted in his complaint that while Wright was in defendants' care, she was declared brain dead despite her religious objections as represented to defendants by plaintiff and died shortly after being taken off a life sustaining ventilator. Plaintiff alleged these actions violated the Act.

The complaint also alleged: (1) defendants negligently, recklessly or intentionally misled plaintiff or failed to properly advise him as to the requirements for declaration of death under the Act and improperly dismissed plaintiff's objections to the declaration of death; (2) defendants negligently and recklessly breached their duty of care to Wright in failing to honor plaintiff's objections to the declaration of death and removal of life support; (3) defendants' actions resulted in Wright's wrongful death; (4) defendants breached an express and/or implied contract requiring that Wright's and plaintiff's rights be observed throughout Wright's treatment and consent would be acquired for treatment; (5) defendants owed a clear duty to respect plaintiff's rights exercised on Wright's behalf as he was the next-of-kin; (6) defendants' conduct was extreme, outrageous, dismissive, discriminatory, and intolerable; and (7) defendants'

3

actions were calculated to produce emotional distress and irreparable harm to plaintiff. Plaintiff alleged he suffered severe and life-altering emotional and mental anguish as well as physical bodily pain and suffering and that Wright sustained severe and irreparable personal injury and damages as well as pain and suffering before her actual death.

Defendants moved to dismiss the complaint, asserting the Act did not establish an explicit or implied private cause of action because it refers to protection of the personal religious beliefs of an individual, not the individual's family members. Defendants argued the religious objection to the withdrawal of life support, allegedly in violation of the Act, was the basis for all of plaintiff's causes of action. Therefore, the court properly dismissed the complaint in its entirety.

In its October 7, 2024 written opinion and accompanying order, the trial court found the clear language of the Act did not explicitly include a private cause of action. The court then considered whether the Act provided for an implied cause of action. After analyzing the complaint under the three-part test articulated in R.J. Gaydos Insurance Agency, Inc. v. National Consumer Insurance Co., 168 N.J. 255, 272 (2001), the court found plaintiff "did not present sufficient evidence that . . . a private right of action [wa]s consistent

with the underlying purposes of the legislative scheme to infer the existence of" the action.

The court also found plaintiff's common law claims all "directly relate[d] back to [the] . . . allegation[s] of improperly declaring Wright's death under [the Act]" and as such were "completely intertwined with the . . . Act, which . . . does not provide a private cause of action."  Therefore, the court found the complaint failed to state a claim upon which relief can be granted and dismissed it under Rule 4:6-2(e).

On leave to appeal granted, plaintiff contends the court erred in dismissing the complaint because the common law counts are cognizable causes of action and there is an implied private right of action under the Act.

"Rule 4:6-2(e) motions to dismiss for failure to state a claim upon which relief can be granted are reviewed de novo."  Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021).  In considering the motion, "[a] reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'"  Ibid. (quoting Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, 237 N.J. 91, 108 (2019)).  The test for determining the adequacy of a pleading is "whether a cause of action is 'suggested' by the facts."

A-0807-24

Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)).

We begin with an analysis of the Act, setting forth the pertinent provisions:  N.J.S.A. 26:6A-3 provides that "[s]ubject to the standards and procedures established in accordance with this act, an individual whose circulatory and respiratory functions can be maintained solely by artificial means, and who has sustained irreversible cessation of all functions of the entire brain, including the brain stem, shall be declared dead."

N.J.S.A. 26:6A-4 establishes specific procedures:

> a.  A declaration of death upon the basis of neurological criteria pursuant to section 3 of this act shall be made by a licensed physician professionally qualified by specialty or expertise, based upon the exercise of the physician's best medical judgment and in accordance with currently accepted medical standards that are based upon nationally recognized sources of practice guidelines, including, but not limited to, those adopted by the American Academy of Neurology.

> b.  Subject to the provisions of this act, the Department of Health, jointly with the State Board of Medical Examiners, shall adopt, and from time to time revise, regulations setting forth requirements, by specialty or expertise, for physicians authorized to declare death upon the basis of neurological criteria.  The regulations shall not require the use of any specific test or procedure in the declaration of death upon the basis of neurological criteria.

6

. . . .

d. If death is to be declared upon the basis of neurological criteria, the time of death shall be upon the conclusion of definitive clinical examinations and any confirmation necessary to determine the irreversible cessation of all functions of the entire brain, including the brain stem.

Under N.J.S.A. 26:6A-5,

[t]he death of an individual shall not be declared upon the basis of neurological criteria pursuant to sections 3 and 4 of this act when the licensed physician authorized to declare death, has reason to believe, on the basis of information in the individual's available medical records, or information provided by a member of the individual's family or any other person knowledgeable about the individual's personal religious beliefs that such a declaration would violate the personal religious beliefs of the individual. In these cases, death shall be declared, and the time of death fixed, solely upon the basis of cardio-respiratory criteria pursuant to section 2 of this act.

An immunity provision is articulated in N.J.S.A. 26:6A-6:

A licensed health care practitioner, hospital, or the health care provider who acts in good faith and in accordance with currently accepted medical standards to execute the provisions of this act and any rules or regulations issued by the Department of Health or the Board of Medical Examiners pursuant to this act, shall not be subject to criminal or civil liability or to discipline for unprofessional conduct with respect to those actions.

A-0807-24

After careful review, we are satisfied the Act does not provide for a private cause of action. As our Supreme Court stated in R.J. Gaydos, "New Jersey courts have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action." 168 N.J. at 271. The Court set forth a tripartite test to determine if there is an implied private right of action contained within a statute, explaining:

> [C]ourts [should] consider whether: (1) [the party asserting the action] is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy.
>
> [Id. at 272.]

"Although courts give varying weight to each one of those factors, 'the primary goal has almost invariably been a search for the underlying legislative intent.'" Id. at 272-73 (quoting Jalowiecki v. Leuc, 182 N.J. Super. 22, 30 (App. Div. 1981)).

In its analysis of the Act under the R.J. Gaydos factors, the trial court found there was "no evidence in [the Act's] text or legislative history that . . . [a] family member's own rights were specifically being protected by the statute's enactment." The court further stated, regarding the second two prongs,

the . . . legislative history of [the Act] provides evidence of its overarching purpose, which is to develop specific parameters in which a healthcare provider can declare an individual dead based on neurological criteria. The court also recognizes that section 4(b) of [the Act], specifically delegates authority to the Department of Public Health and the New Jersey State Board of Medical Examiners to develop and revise regulations for physicians authorized to declare death, which is evidence that [the Act] is subject to "pervasive" regulation by a State agency, in which case a court must be especially hesitant in inferring a private right of action.

There is no implicit private right of action under the Act. The trial court properly noted the primary purpose of the Act is to empower the Department of Health and State Board of Medical Examiners to formulate and update regulations for physicians authorized to declare death and methods of oversight in an everchanging area of medicine.

We turn then to plaintiff's common law causes of action. Our courts have stated that even if a statute does not authorize a private right of action, it "does not necessarily mean that the Legislature intended that no such actions should exist. Indeed, the presumption is against statutory abrogation of a common[]law right. To abrogate a common[]law right, the Legislature must speak plainly and clearly." Campione v. Adamar, Inc., 155 N.J. 245, 265 (1988).

In R.J. Gaydos, the Court found that although the plaintiff did not have a private right of action to pursue its claim under the applicable statute, the plaintiff could still assert a common law cause of action for breach of the implied duty of good faith and fair dealing, even when that claim was based solely on allegations that the defendant violated the statute. 168 N.J. at 281.

The Act explicitly immunizes licensed health care practitioners, hospitals, and health care providers from all civil liability. N.J.S.A. 26:6A-6. However, in order for the immunity to attach, the health care professional must "act[] in good faith and in accordance with currently accepted medical standards [in] execut[ing] the provisions of [the] act." Ibid.

When interpreting a statute's plain meaning, "words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the [L]egislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language." In re J.S., 444 N.J. Super. 303, 308 (App. Div. 2016) (alteration in original) (quoting State v. Hupka, 203 N.J. 222, 232 (2010)); see also N.J.S.A. 1:1-1.

A plain reading of Section 6 reveals there are conditions to the attachment of immunity. The health care provider must "act in good faith" and in

conformity with accepted medical standards. Therefore, civil liability may not be barred in every instance, allowing a common law cause of action to survive in certain circumstances.

Plaintiff has asserted common law claims of negligence, wrongful death, and intentional infliction of emotional distress. Although they are related to his allegations that defendants violated the Act, the negligence-based claims are not automatically abrogated. A review of the complaint indicates plaintiff has provided sufficient facts, given all reasonable inferences, from which a cause of action may be gleaned for those claims. Therefore, the dismissal of those counts was premature.

We agree the court properly dismissed plaintiff's breach of contract claim. There were no facts establishing the existence of an express or implied contract between the parties pertaining to these circumstances and defendants' conduct regarding the Act.

To be clear, plaintiff must still satisfy the requisite elements of his claims and demonstrate defendants are not entitled to immunity for their conduct as articulated in the Act. We only conclude that he presented sufficient facts in the complaint to survive dismissal of the specified negligence-based counts under Rule 4:6-2(e).

Affirmed in part, vacated in part, and remanded for further proceedings in accordance with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0807-24